U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 06-05105

ORDER SUSTAINING TRUSTEE'S OBJECTION TO CLAIM OF REGIONAL MANAGEMENT CORPORATION AND DENYING MOTION FOR RELIEF FROM STAY

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/19/2007**



US Bankruptcy Court Judge
District of South Carolina

Entered: 03/21/2007

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: ) | Chapter 13 |
| ) | Case No. 06-05105-dd |
| Randolph Lewis, Jr. ) | |
| JoAnn Lewis ) | |
| Debtors. ) | |
| ) | |

ORDER SUSTAINING TRUSTEE'S OBJECTION TO CLAIM OF REGIONAL MANAGEMENT CORPORATION AND DENYING MOTION FOR RELIEF FROM STAY

This matter is before the Court on the motion filed by Regional Management Corporation ("Regional") to annul the automatic stay and on the chapter 13 trustee's objection to the claim filed by Regional. This Court has jurisdiction of these matters pursuant to 28 U.S.C. § 157. The matters are core proceedings. The following facts have been stipulated or are not in dispute:

**Findings of Fact[1]**

1.      Randolph Lewis, Jr. and JoAnn Lewis ("Debtors") sought credit counseling on September 18, 2006.

2.      Randolph Lewis, Jr. ("Lewis"), on or about October 4, 2006, arranged to purchase a used 2003 Ford Ranger, 1FTYR14V83PA71544, from Lexington Automotive & Truck Outlet, Inc. The vehicle was purchased for Lewis' personal, family, or household use.

3.      On or about October 5, 2006, Lewis executed a Combination Promissory Note, Security Agreement and Disclosures Required by Federal Law ("Note") with Sun Financial, a subsidiary of Regional, in order to finance the purchase of the subject vehicle.

---

[1] To the extent that any finding of fact includes a conclusion of law, it is adopted as such and to the extent any conclusion of law constitutes a finding of fact it is likewise adopted as such.

4. Regional now holds the claim against Lewis.

5. Lexington Automotive & Truck Outlet, Inc., executed the requisite documentation necessary for the issuance of a certificate of title by the South Carolina Department of Motor Vehicles ("Motor Vehicle Documentation").

6. All of the Motor Vehicle Documentation is dated October 4, 2006.

7. The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 7, 2006.

8. Joy S. Goodwin ("Trustee") is the chapter 13 trustee of the Debtors' estate.

9. The Debtors' proposed plan, dated November 2, 2006 (and filed November 8, 2006), provides for treatment of Regional as a secured creditor.

10. On November 15, 2006, a representative of Lexington Automotive & Truck Outlet, Inc. delivered the Motor Vehicle Documentation to the South Carolina Department of Motor Vehicles, some 41 days after the Note was signed.

11. On November 20, 2006, the South Carolina Department of Motor Vehicles issued the Certificate of Title for the 2003 Ford Ranger showing Lewis as the owner and Sun Financial as the first lienholder.

12. The Certificate of Title sets forth that the date of Sun Financial's lien is October 4, 2006.

13. On November 27, 2006, Regional filed a proof of claim with the Bankruptcy Court and reflected the vehicle's value as $10,250.00 and a debt of $11,096.62.

14. The debt owed to Regional was incurred by Lewis within the 910-day period preceding the date of the filing of Debtors' petition.

15. On December 13, 2006, Regional objected to the confirmation of the Debtors' plan dated November 2, 2006.

16. On December 21, 2006, the Trustee objected to Regional's proof of claim; an amended objection was filed by the Trustee on December 27, 2006. Both objections were timely responded to by Regional.

17. On January 4, 2007, Regional filed its motion seeking to annul the automatic stay.

18. On January 13, 2007, the Debtors filed their objection to Regional's motion to annul the automatic stay; on February 1, 2007, the Debtors filed an amended objection to Regional's motion. The Trustee did not file an objection.

19. The Debtors filed amended schedules and statements on February 2, 2007 claiming a motor vehicle exemption in the 2003 Ford Ranger pursuant to 11 U.S.C. §522(b)[2] and S.C. CODE ANN. § 15-41-30(2).[3]

20. The Debtors' amended schedules reflect a value for the 2003 Ford Ranger of $9,175.00.

21. The Trustee, counsel for Debtors and counsel for Regional agreed to pursue these matters as contested matters rather than by filing an adversary action.[4]

---

[2] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*, will be by section number only.

[3] Further reference to the South Carolina Code will be by section number only.

[4] While some aspects of this matter would more properly be treated as an adversary action under §§ 549 and 544(a), the Court allowed the parties to proceed in the context of a contested matter since the issues are relief from the automatic stay, an objection to claim, and all parties agreed the procedure.

**The Parties' Contentions**

The Trustee contends that the security interest of Regional should be avoided or is void and that the claim should be treated as unsecured since the lien was perfected in violation of the automatic stay and outside the "safe harbor" under State law. Regional contends that it holds a valid security interest in the vehicle, that the Debtors created the problem by filing bankruptcy, that the Trustee does not have the same avoidance powers as a chapter 7 trustee, and that the automatic stay should be annulled retroactively in order to recognize the perfection of Regional's lien. Regional also claims the benefit of the "hanging paragraph" of § 1325(a).[5]

**Conclusions of Law**

Regional argues that the Trustee is essentially a disbursing agent and that the duties conferred on the Trustee by § 1302(b)[6] preclude the notion that the Trustee should

---

[5] The 2005 amendments to the Bankruptcy Code include the addition of an un-numbered paragraph to § 1325(a). It is often referred to as the "hanging paragraph" or the "flush language."

[6] The Trustee's duties for Chapter 13 cases are spelled out in § 1302(b), which states:
    (b) The Trustee shall —
        (1)    perform the duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), 704(7), and 704(9) of this title;
        (2)    appear and be heard at any hearing that concerns —
            (A) the value of property subject to a lien;
            (B) confirmation of a plan; or
            (C) modification of the plan after confirmation;
        (3)    dispose of, under regulations issued by the Director of the Administrative Office of the United States Courts, moneys received or to be received in a case under chapter XIII of the Bankruptcy Act;
        (4)    advise, other than on legal matters, and assist the debtor in performance under the plan;
        (5)    ensure that the debtor commences making timely payments under section 1326 of this title; and
        (6)    if with respect to the debtor there is a claim for a domestic support obligation, provide the applicable notice specified in subsection (d).

The duties of § 704, incorporated by reference above, require the Trustee to:
        (2)    be accountable for all property received;
        (3)    ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;
        (4)    investigate the financial affairs of the debtor;

pursue avoidance actions. It notes that the Trustee has no duty to "collect and reduce to money the property of the estate . . ." as does a chapter 7 trustee. See § 704(a)(1). This construction of the duties and powers of a chapter 13 trustee is unduly narrow. First, it ignores that "chapters 1, 3, and 5 of [Title 11] apply in a case under chapter . . .13. . . ." § 103(a). Second, "[t]here is general agreement that the Chapter 13 Trustee has standing to avoid transfers and recover property under §§ 544 (strong-arm power), 547 (preferences), 548 (fraudulent conveyance) and 549 (postpetition transfers)." 1 *Chapter 13 Bankruptcy 3d Ed.,* §60.1 at 60-1 (Keith M. Lundin, ed. 2000 & 2004 Supp). *See also IRS v. Diperna*, 195 B.R. 358, 360 (E.D. N.C. 1996) (chapter 13 trustee has status of a bona fide purchaser under § 545(2) – although the IRS lien was not avoidable under the "purchaser's" requirement of 26 U.S.C. § 6322.); *GAF Linden Employees Fed. Credit Union v. Robertson (In re Robertson),* 232 B.R. 846, 853 n.11 (Bankr. D. Md. 1999) (chapter 13 trustee has standing to bring an action under § 544); *In re Bonner*, 206 B.R. 387, 388 (Bankr. E.D. Va. 1997) (same); *Stephenson v. First Union Nat'l Bank (In re Berry)*, 189 B.R. 82 (Bankr. D. S.C. 1995) (same*); Walls v. Appalachian Tire Prods. Inc.*, 17 B.R. 701 (Bankr. S.D. W.V. 1982) (preference); *Colandrea v. Colandrea*, 17 B.R. 568 (Bankr. D. Md. 1982) (chapter 13 trustee possesses all the avoidance powers – preferences and fraudulent conveyances at issue); *In re Church*, 206 B.R. 180, 183 (Bankr. S.D. Ill. 1997)(chapter 13 trustee has the power to avoid an unperfected lien on a

---

6 (cont.) (5)     if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
      (6)     if advisable, oppose the discharge of the debtor;
      (7)     unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest; . . .
      (9)     make a final report and file a final account of the administration of the estate with the court and with the United States Trustee.

motor vehicle under § 544(a)(1)). The Trustee has the authority to bring the avoidance action.

Regional also argues that if Trustee has authority to bring the avoidance action, a point it partially concedes pursuant to § 103, then the standing cannot or should not be exercised without reference to the effect the avoidance will have on the Debtors and the estate and to the fact that the secured transaction is binding between Lewis and Regional. This argument is intertwined with the substantive issues relating to the security interest, perfection and annulment of the stay and will be discussed with those issues.

Regional has filed a proof of claim in this case. The proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f); *In re Spencer*, 354 B.R. 758, 761(Bankr. D. S.C. 2006). Once an objection is raised, the objector bears the burden of going forward to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992). If the objector produces evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate by a preponderance of evidence that the claim deserves to share in the distribution of the Debtor's assets. *Id.* at 174. Here the stipulated facts are sufficient to negate the presumption of validity and the burden is on Regional.

The extent of property interests, the requirements for liens, and the priority of liens are defined by state law. *In re Robertson*, 232 B.R. 846, 848 (Bankr. D. Md 1999). *See also Butner v. United States*, 440 U.S. 48, 55 (1979)("Property interests are created and defined by state law."). The law of secured transactions in South Carolina is governed by the Uniform Commercial Code – Secured Transactions as adopted in § 36-9-

101 *et. seq.* The creation of security interests, the validity of security agreements and the rights of the parties to those agreements are governed by § 36-9-201 *et. seq.,* and the perfection of a security interest in goods covered by a certificate of title[7] is governed by §§ 36-9-303(c), 36-9-311, 36-9-313(b), 36-9-316(d) and (e), 36-9-337, 56-19-620, and 56-19-630.

In South Carolina "a security interest in a vehicle . . . is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle unless perfected . . . ." as provided in § 56-19-610 *et. seq.* § 56-19-620. "A security interest is perfected by the delivery to the Department of Motor Vehicles of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within ten days thereafter, otherwise, as of the time of delivery." § 56-19-630.

The Trustee has the right of subsequent creditors and *bona fide* purchasers pursuant to §544. "A lien on a motor vehicle which is unperfected for failure to comply with a certificate of title statute is subordinate to the interests of a subsequent bona fide purchaser." 79 *C.J.S. Secured Transactions* § 117. Regional's security interest was unperfected on the date of the filing of the bankruptcy petition. The security interest is subordinate to the rights of the Trustee as a person who became a lien creditor before the security interest was perfected. § 36-9-317(a)(2)(A). This subordination occurs whether the lien is actually avoided or not. See *Robertson*, at 850.

---

[7] If the collateral is inventory held for sale by a person in the business of selling goods of the type to which the certificate of title laws apply, then the security interest and perfection issues during the time the goods are inventory are governed by Part 5 of Article 9. § 36-9-311(a)(2).

Regional argues that this Court's holding in *Spencer* compels a different result. It does not. The § 544 analysis in the *Spencer* case rests on the constructive notice afforded under South Carolina law to a recorded mortgage, regular on its face, regardless of hidden defects in execution. *Spencer* at 765 (*citing Franklin Sav. & Loan Co., v. Riddle*, 216 S.C. 367, 371, 57 S.E.2d 910 (SC 1950)). This is not the case with a certificate of title. It is true that "[a] certificate of title issued by the Department of Motor Vehicles is prima facie evidence of the facts appearing on it." § 56-19-320. However, South Carolina law is replete with authority that the certificate of title is not determinative of the facts represented on the face of the certificate and that ownership, in particular, can be proven through other evidence. See *American Indem. Co. v. Richland Oil Co.*, 273 F. Supp. 702 (D. S.C. 1967); *Tollison v. Reaves*, 277 S.C. 443, 289 S.E.2d 163 (SC 1982). There is no reason that this does not extend to other matters of fact set out on the certificate of title; matters relating to liens, for example. The notation of the effective date of the lien on the certificate of title must fall to the proof of the effective date under the stipulated facts and the application of state law.

Federal and state law work in tandem pursuant to § 544(a)(1)[8]. The priority of the Trustee's claim as a judicial lien creditor in relation to the interest of Regional is determined by state law. The Trustee has priority under state law and federal law supplies the consequence. The inferior interest of Regional is entirely avoided and Regional is left with an unsecured claim against the estate. See *In re Bell*, 194 B.R. 192,

---

[8] "(a) The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the Trustee or of any creditor, the rights and powers of , or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by – (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists." § 544(a)(1).

195 (Bankr. S.D. Ill. 1996); *Anderson v. Dick Smith Nissan, Inc. (In re Joyner)*, No. 02-12840-W, Adv. Pro. No. 03-80158-W (Slip op. at 13) (Bankr. D. S.C. January 5, 2004). Regional is correct that the Trustee should not exercise her avoidance powers if there is no benefit to the estate or to other creditors. Here, by virtue of §§ 1325(a)(4) and 1325(b)(1) – the liquidation and disposable income tests, the debtor does not receive any windfall and the unsecured creditors, including Regional to the extent of its unsecured claim, receive a greater distribution. *Id*. at 198; *See also, Johnson v. Home State Bank*, 501 U.S. 78, 87-88 (1991). The Trustee's action brings benefit to the estate.

Regional argues that the "hanging" or "flush" language of 1325(a)[9], enacted as one of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amendments to the Bankruptcy Code[10] precludes avoidance of its lien. The reliance on this provision is misplaced as it only applies to an "allowed secured claim." § 1325(a)(5). A claim is deemed allowed unless a party in interest objects to the claim. § 502(a). The claim must be disallowed in its entirety pursuant to § 502(d) but for the avoidance of the transfer of the security interest pursuant to § 549. The secured status of the claim under § 506, which the 'hanging paragraph" seeks to protect from valuation, simply does not come into play in this case.

To benefit from the protection of the "flush" language, the creditor must first have an allowed claim and it must be an allowed secured claim. Regional does not have an

---

[9] "For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition and the collateral for the debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtors. . . ."
Paragraph (5) provides: "with respect to each allowed secured claim provided for by the plan – . . . ." § 1325(a)(5).

[10] Pub. L. No. 109-8, 119 Stat.23. Provisions of BAPCPA are codified throughout Title 11.

allowed secured claim because it failed to timely perfect the security interest. The security interest fails in the face of the Trustee's standing as a subsequent creditor and a bona fide purchaser. Additionally, the action to perfect the security interest of Regional was taken in violation of § 362(a)(4) and is void *ab initio*. *In re Robinson*, C/A No. 00-07173-JW (Bankr. D. S.C. 4/26/2001). The creation of the security interest is a transfer of property of the estate after the commencement of the case and without authorization under Title 11 or by the Court. § 549(a). It is avoidable by the Trustee. Perfection of the security interest was not accomplished within the "safe-harbor" allowed under state law and it, therefore, does not relate back to the date of its creation.

Regional argues that the Debtors are abusing the bankruptcy system by obtaining credit counseling, purchasing a vehicle and then filing for bankruptcy relief. Regional states that the debtors filed for bankruptcy protection 32 days after purchasing the vehicle and provided the Trustee with information about the transaction. It asks the Court to determine that that this is "contrived." The Court cannot make this inference from the stipulated facts. There is no windfall to Lewis, who must pay all of his disposable income to the Trustee without regard to whom the trustee may distribute funds. In fact, to adopt Regional's argument would result in a detriment to the other creditors. If Regional is paid as a secured creditor and the debtor is required to pay to the unsecured creditors what they would receive in a chapter 7 case (following the avoidance that Regional concedes the chapter 7 Trustee would be required to pursue) the Debtors would be required to pay twice for the vehicle, the plan would fail, and the unsecured creditors would receive nothing. There is no proof of bad faith in these facts.

Lastly, Regional argues that there is cause to annul the stay because the actions of Lewis in filing bankruptcy created the perfection problems. Regional claims bad faith on the part of the Debtors. First, there is no evidence of bad faith in the stipulated facts. Second, the failure to ensure that the lien was perfected does not rest with the Debtors. While the "owner" is required to apply for a certificate of title under state law, retail automotive dealers actually arrange financing and handle the necessary paperwork to obtain titles and register liens. Timely submission of the papers is more subject to control by Regional and its subsidiary than an individual consumer debtor. The actions to perfect the lien were in violation of § 362(a)(4) and, under these circumstances, where the lender could and should have protected its interest, but did not, the stay will not be annulled. *See Rock Hill National Bank v. York Chemical Industries, Inc. (In re York Chemical Industries)*, 30 B.R. 583, 586 (Bankr. D. S.C. 1983)(lender who satisfied or permitted expiration of financing statement not entitled to relief from stay to re-perfect its lien).

The claim of Regional is allowed in the amount filed as a general unsecured claim without priority. Regional's motion for annulment or relief from the stay is denied.
AND IT IS SO ORDERED.